| LISA JOHANNA SWENSON COULON | * | NO. 2022-CA-0619 |
| | * | |
| VERSUS | * | COURT OF APPEAL |
| | * | |
| CHARLES JOSEPH COULON | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2012-00153, DIVISION "I-14"
Honorable Lori Jupiter, Judge
\* \* \* \* \* \*
**Judge Edwin A. Lombard**
\* \* \* \* \* \*

(Court composed of Judge Edwin A. Lombard, Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase)

Gordon J. Kuehl
HOFFMAN NGUYEN & KUEHL, L.L.C.
541 Julia Street, Suite 200
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLEE

Peggy Gonsoulin Vallejo
THE VALLEJO LAW FIRM, LLC
428 W. 21st Avenue
Covington, LA 70433

      COUNSEL FOR DEFENDANT/APPELLANT

                  **AFFIRMED**

**NOVEMBER 9, 2022**

The Appellant, Charles Joseph Coulon ("Mr. Coulon"), seeks review of the July 20, 2022 judgment of the district court, granting the Motion for Temporary and Permanent Authorization to Relocate with the Minor Child in Accordance with LA. R.S. 9:355, et seq., and Request for Expedited Hearing under the Statute (the "Motion To Relocate") of the Appellee, Lisa Johanna Swenson Coulon ("Ms. Swenson") and denying his Motion for Modification of Custodial Schedule and Request for *Watermeier* Hearing. Finding no abuse of the district court's discretion, we affirm the judgment of the district court.

**Facts and Procedural History**

Ms. Swenson is from Duluth, Minnesota. After meeting Mr. Coulon in 2003, the couple married in North Carolina in 2005, and moved to New Orleans in 2007. Their only child, H.C., was born in New Orleans on September 16, 2010. The parties later divorced on March 4, 2013.

Prior to their divorce, however, on November 13, 2012, a Final Consent Judgment Regarding Child Support, Child Custody, Permanent Spousal Support and Community Property Partition ("Final Consent Judgment") was rendered, wherein the trial court awarded joint custody to the parties, with Ms. Swenson designated as the domiciliary parent and primary custodial parent. The physical custody schedule, set forth in the Final Consent Judgment, provides that Mr. Coulon shall have physical custody of H.C. every other weekend, with Ms. Swenson having physical custody at all other times, as well as the entirety of June and July each year, which she is entitled to spend at her home state of Minnesota. Mr. Swenson's child support payment to Ms. Swenson was set at $632.73, and he was also ordered to pay a proportionate part of the childcare expenses, including daycare.

On March 18, 2022, Ms. Swenson advised Mr. Coulon of her proposed relocation with H.C. to Duluth, Minnesota, pursuant to La. Rev. Stat. 9:355.4. He timely objected to the relocation under La. Rev. Stat. 9:355.7. Later on April 21, 2022, Ms. Swenson filed a motion for temporary and permanent authorization to relocate with H.C., which Mr. Coulon opposed. In her motion she alleged that Mr. Coulon was in arrears on his child support in the amount of $19,257.78.[1] Mr. Coulon in response, asked for modification of the custody arrangement, and requested a *Watermeier* hearing to permit H.C. to testify about relocation.

---

[1] Two contempt judgments have been rendered against Mr. Coulon stemming from his failure to timely and/or fully pay child support. The first judgment was rendered on July 11, 2014, ordering him to pay $2,135.00 in past due child support, and increasing the amount of child support due to $985.23 a month prospectively. Later, on June 25, 2018, the district court issued a judgment holding Mr. Coulon in contempt for failing to pay child support. The district court held that $18,265.12 was the amount of child support due and owing at that time and was made executory. After the Motion for Relocation was filed, Dr. Erin O'Sullivan, Mr. Coulon's girlfriend, paid the outstanding amount of child support due, $19,257.78, on Mr. Coulon's behalf.

The relocation hearing was held on July 12, 2022. Mr. Coulon moved again for a *Watermeier* hearing on the record, which the district court took under advisement. Five people testified at the relocation hearing: Ms. Swenson, her mother Judy Swenson, Mr. Coulon, his girlfriend Dr. Erin O'Sullivan and his sister Martha Coulon. At the conclusion of the hearing, the district court took the matter under advisement. On July 20, 2022, the district court rendered judgment granting the motion for relocation and denying the motion for modification of custodial schedule and request for *Watermeier* hearing of Mr. Coulon. This timely appeal followed. The district court, thereafter, issued Reasons for Judgment at Mr. Coulon's request.

Mr. Coulon raises two assignments of error: the district court erred in failing to conduct a *Watermeier* hearing; and the district court manifestly erred in granting Ms. Swenson's relocation request.

### *Watermeier Hearing*

In his first assignment of error, Mr. Coulon asserts that the district court erred in denying his motion and oral request for a *Watermeier* hearing[2] because the district court deprived itself from hearing directly from H.C. about relocating.

At the relocation hearing, the district court explained to the parties that its process is to defer judgment on whether to hold a *Watermeier* hearing until all the testimony had been heard and after listening to any opposition. The district court also noted that H.C. was not present at the hearing. Additionally, counsel for Ms. Swenson asserted that while she had been served with a courtesy copy of Mr.

---

[2] A *Watermeier* hearing is one held "in chambers, outside the presence of the parents, but in the presence of their attorneys, with a record of the hearing to be made by the court reporter, to inquire as to the competency of a child to testify as to custody." *Patterson v. Charles*, 19-0333, p. 20 (La. App. 4 Cir. 9/11/19), 282 So.3d 1075, 1089 (quoting *S.L.B. v. C.E.B.*, 17-0978, 0979, 0980, p. 13 (La. App. 4 Cir. 7/27/18), 252 So.3d 950, 960 n.12). *See also Watermeier v. Watermeier*, 462 So.2d 1272 (La. App. 5th Cir. 1985).

4

Coulon's opposition to the relocation, she was not served with the pleading, which she argued did not contain an order for a *Watermeier* hearing.

Lastly, in its Reasons for Judgment, the district court explained that it denied the request for a *Watermeier* hearing given the strong weight of the majority of the statutory factors leaning toward relocation, making holding a hearing unnecessary. Considering the foregoing facts, including the district court's process for determining whether to hold *Watermeier* hearings, we do not find that the district court erred in declining to hold a *Watermeier* hearing.

### *Relocation*

"Under certain circumstances, the relocation of a child's principal residence to a location out of state or in state is governed by Louisiana's relocation statutes, La. R.S. 9:355.1-9:355.19." *Gautreaux v. Gautreaux*, 19-1486, p. 3 (La. App. 1 Cir. 7/23/20), 309 So.3d 362, 365. When the relocation of the child's principal residence is contested, La. Rev. Stat. 9:355.10 requires that the relocating parent prove that the proposed relocation is: (1) made in good faith; and (2) in the best interest of the child. *Id.,* 19-1486, pp. 3-4, 309 So.3d at 365 (citing *Curole v. Curole*, 02-1891, pp. 4-5 (La. 10/15/02), 828 So.2d 1094, 1096).

Louisiana Revised Statute 9:355.14, entitled *Factors to determine contested relocation*, sets forth 12 factors for courts to consider when deciding relocation cases:

> A. In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following:
>
> (1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-

5

relocating person, siblings, and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.

(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

Courts are required to consider all 12 factors in conducting its best interest analysis; however, courts are permitted to weigh some factors more heavily than others. *Gathen v. Gathen*, 10-2312, p. 13 (La. 5/10/11), 66 So.3d 1, 10. On appeal, a district court's determination in a relocation case "will not be overturned absent a clear showing of abuse of discretion." *Curole,* 02-1891, p. 4, 828 So.2d at 1096. Moreover, in reviewing the record to determine whether there was an abuse of discretion, an appellate court must accept each factual finding the trial court made in arriving at that conclusion, unless the particular factual finding is manifestly erroneous. *LaGraize v. Filson*, 14-1353, p. 15 (La. App. 4 Cir. 6/3/15), 171 So.3d 1047, 1054 (citing *H.S.C. v. C.E.C.,* 05-1490, p. 23 (La. App. 4 Cir. 11/8/06), 944 So.2d 738, 750). (Murray, J., concurring).

In the matter *sub judice*, the testimony adduced at trial reflects that Ms. Swenson's plans to relocate to Duluth were made in good faith. Ms. Swenson attested to needing to relocate to serve as a caretaker for her 77 year-old mother, Judy Swenson ("Ms. Judy"). Ms. Judy related that she no longer has anyone in state who can assist with and/or oversee her care as she ages. Both Ms. Swenson and Ms. Judy testified that Ms. Judy's original caretaker was her daughter Sonja. However, Sonja's passing in 2020 necessitated that Ms. Judy seek assistance with her care.

Ms. Swenson, formerly a Newman educator, testified that she has secured employment at a school in Duluth, the Marshall School, and would teach online, thereby earning a slightly higher salary than she does in New Orleans. Ms.

7

Swenson related H.C. would be able to attend the same school where Ms. Swenson would be employed, the Marshall School. She explained that the Marshall School is academically comparable to H.C.'s current school, Lycée Français de la Nouvelle-Orléans, and offers similar extracurricular activities. The testimony of both Ms. Swenson and her mother further revealed that the Swensons have a connection with Marshall School with family members having attended both in the past and currently.

The testimony of Ms. Swenson, Ms. Judy and Mr. Coulon further reflect H.C. is familiar with Minnesota, having visited the state every year of her life. Ms. Swenson testified that the move would allow H.C. more time to spend with her grandmother, as well as other relatives in Duluth. Moreover, the testimony of both Ms. Swenson and Mr. Coulon reflect that Ms. Swenson, as the domiciliary parent, is the sole parent who coordinates H.C.'s medical care and that she has been responsible for H.C. emotionally and financially.[3]

Regarding Mr. Coulon, the testimony from the parties, as well as Dr. O'Sullivan and Martha Coulon, revealed that H.C. has a close and loving relationship with Mr. Coulon, who testified that he is an honorably discharged Marine veteran that receives disability. He further related he has been unable to work for several years due to injuries he sustained. Mr. Coulon attested to living with Dr. O'Sullivan, his girlfriend of several years, upon whom he is financially dependent. The district court also took into consideration that Mr. Coulon has consistently been unable to fulfill his child support obligation. Lastly, the district court considered that Mr. Coulon could maintain contact with H.C. through the

---

[3] Both parties testified that there was a period from 2013 to 2014, when Mr. Coulon relocated to Florida and did not visit with H.C. for a year. This was also the initial time period where Mr. Coulon fell into arrears on his child support obligation.

telephone and video after she relocates. The district court further reasoned that the visitation schedule could be modified and adjusted the schedule such that Mr. Coulon and H.C. could physically spend time together comparable to the amount of days they currently enjoy.

Lastly, the record reflects that the district court directly questioned the witnesses at the relocation hearing, primarily Ms. Swenson and Mr. Coulon, querying them regarding the various factors set forth in La. Rev. Stat. 9:355.14. The district court's Reasons for Judgment further evidence the district court weighed the statutory factors, reasoning that they militated in favor of Ms. Swenson being able to relocate to Minnesota with H.C. As noted above, there was sufficient testimony adduced at the hearing for the district court to conclude that relocation to Duluth with Ms. Swenson would positively impact H.C.'s physical, educational, and emotional development. Thus, the district court could reasonably determine that the proposed relocation was made in good faith and is in the best interest of H.C.

Therefore, finding no abuse of discretion, we affirm the district court's grant of Ms. Swenson's Motion to Relocate.

**DECREE**

For the foregoing reasons, the July 20, 2022 judgment of the district court is affirmed.

**AFFIRMED**